### In re SUNSHINE PRECIOUS METALS, Debtor.

### Bankruptcy No. 92–00749.

United States Bankruptcy Court, D. Idaho.

June 11, 1992.

---

John S. Simko and Jed W. Manwaring, Evans, Keane, Koontz, Boyd, Simko & Ripley, Boise, Idaho, for debtor.

Henry W. Simon, Jr., Simon, Anisman, Doby, Wilson & Skillern, Fort Worth, Tex., and Terry L. Myers, Givens, Pursley, Webb & Huntley, Boise, Idaho, for Unsecured Creditors Committee.

Tracy A. Goad, Mayer, Brown & Pratt, Chicago, Ill., for Continental Bank Nat. Ass'n.

John F. Kurtz, Jr., Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for West One Bank.

R. Wayne Sweney, Lukins & Annis, Coeur d'Alene, Idaho, for Hecla Min.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

At issue is the motion of the Unsecured Creditors Committee, joined in by Continental Bank and West One Bank, to prohibit the debtor from using cash collateral and an alternative motion to provide adequate protection. The relevant cash collateral is the silver currently being produced by· the debtor's mining operation in Shoshone County, Idaho, in which the owners of eight silver index bond issues hold interests. The creditors' interests in the silver production derive from the bond indentures which define the security interests securing the bonds.[1]

---

1. The indentures provided in part:
   "... the Company hereby irrevocably GRANTS, MORTGAGES, TRANSFERS AND ASSIGNS to the Trustee a continuing security interest in, and lien on, that undivided interest in all of the Company's present right, title and interest, and in any and all such right, title and

interest hereafter acquired, in and to the minerals, mineral rights, ore deposits and silver reserves located at, and the silver/copper residue and iron pyrite concentrates, and any and all other concentrates or other minerals or ores, or any combination of the foregoing, produced through operation of or extracted from the Sun-

The debtor offers several defenses to the motion. The debtor first argues that since the date of the "annual production period", under the terms of the indentures, would not begin until April 1, 1992, the security interests of the bondholders would be limited to raw ore and concentrates produced after that date. Thus, the debtor contends, the provisions of 11 U.S.C. § 552(a) vitiate the security interests as a result of the debtor's chapter 11 filing.

Second, the debtor argues the motion to prohibit use of cash collateral is premature. Since the formula for computing the amount of production attributable to the various security interest requires the lesser of the annual production percentage or the yearly entitlement, the amount of production due each holder of security interest will not be known until after a twelve month period. Moreover, the debtor contends, ore and concentrates produced after April 1, 1992 will take four months to reach the state of refined silver.

Third, the debtor argues the granting of the motion would foreclose it from using 32% of the silver production. Since the cost of production of silver is less than the market value of the production there would be revenues from which the operation of the mine could continue. The debtor proposes either: (1) a delay in the decision on this issue, or (2) an adequate protection order segregating ore, or concentrates produced on or after April 1, 1992. Under the proposed adequate protection order, the debtor would continue to refine the segregated ore and concentrates but would agree not to sell the segregated materials until either confirmation of the debtor's plan or August 1, 1992. This adequate protection option would allow Sunshine to operate the mine until at least July 1, 1992.

■ As concerns the cash collateral issue, none of the debtor's arguments are convincing. The security interests were not terminated under 11 U.S.C. § 552(a), but were continued by the provision of 11 U.S.C. § 552(b) since the security interest extends to the profits, proceeds and products of the minerals, mineral rights or deposits, and/or silver reserves.[2]

The security interests extend to the raw ore and concentrates from which the silver production evolves, according to the plain wording of the indenture documents. Even though the silver production apportionment is based on annual percentages, security interest still exists in the silver production.

■ Since the security instruments impose no operating or production factors or restrictions on the production allotments, the production costs cannot be considered in the context of the determination of the extent of the bondholders cash collateral. The factor of the cost of producing the silver is not relevant to the fact the allotted silver production is the cash collateral of the bondholders. The cost factors of production of the silver, however, may be relevant to issues of adequate protection.

■ It is thus determined the silver production of the debtor is subject to the security interests of the bondholders. It at

---

shine Mine (as more particularly described in Exhibit I hereto) located in Shoshone County, Idaho, and all rents, issues, profits, proceeds and products thereof and therefrom, necessary to produce and equal [Here we insert the specific collateral percentage of the gross mining production of the mine allotted to each of the bond issues] ... during each twelve-month period (the "Annual Production Period"), the first such Annual Production Period beginning on the first day of the month immediately following the month in which the date of acceleration with respect to the Series Bonds pursuant to the provisions of the Indenture (the "Acceleration Date") occurs, and in each successive Annual Production Period thereafter until the Trustee, for the benefit of the Holders of the Series Bonds, shall have received ..."

**2.** 11 U.S.C. § 552(b) provides:

... if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents or profits of such property, then such security interest extends to such proceeds, product, offsprings, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

least appears, at this stage of the proceeding, the debtor is using 32% of the silver production for operating costs, which asset is the cash collateral of the bondholders. The debtor, however, is entitled to further hearing on the issues of the relationship between the cost of production and the extent of the cash collateral, and, generally, the extent of the cash collateral use, and the furnishing of adequate protection to the bondholders. For those purposes, adequate protection will be considered at the hearing set for June 23, 1992 in Coeur d'Alene, Idaho, otherwise the motion to prohibit the use of cash collateral will be granted at that time.